IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KATHY ANN JOSEPH : | |
| : | Civil Action No.: 07-1852(FLW) |
| Plaintiff : | |
| vs. : | |
| : | OPINION |
| ALBERTSONS n/k/a SUPERVALU : | |
| ACME MARKETS : | |
| CARL JABLONSKI : | |
| DIANE APA-HAUSER : | |
| and : | |
| JAMES FARNHAM : | |
| Defendants : | |

**WOLFSON, United States District Judge:**

Pro Se Plaintiff Kathy Ann Joseph ("Plaintiff" or "Joseph") was an employee of Acme Markets, Inc. ("Acme") from 1995 to 2005. Defendant Albertsons n/k/a SUPERVALU INC. ("SUPERVALU") is Acme's parent company. Defendant Carl Jablonski was the President of Acme during Plaintiff's employment. Defendant Diane Hauser was Acme's Director of Labor Relations and Employment Counsel from September 2001 until February 2007. Defendant James Farnham ("Farnham") was Acme's Store Director and Plaintiff's supervisor from February 2001 until July 2004. Joseph brings this action claiming that her rights under the American with Disabilities Act ("ADA"), the New Jersey Law Against Discrimination ("NJLAD"), and 42 U.S.C. § 1983 were violated. Defendants seek summary judgment on all claims. For the reasons discussed below, Plaintiff's federal claims are dismissed, and her state law claims are dismissed

without prejudice pursuant to 28 U.S.C. § 1367(c).[1]

## Factual Background

Defendant Acme is a retail grocery store with locations in Delaware, Maryland, New Jersey and Pennsylvania. (Defendant's Statement of Undisputed Facts, ¶ 2. . Plaintiff worked as a part-time clerk at Acme's store in Morrisville, Pennsylvania beginning on October 27, 1995. *Id.* at ¶¶ 1, 15. During her employment with Acme, Plaintiff was a member of the United Food and Commercial Workers Union ("UFCW") Local 1360. *Id.* at ¶ 7. Acme and the UFCW have a Collective Bargaining Agreement ("CBA") which contains terms and conditions of employment for Acme employees including Plaintiff. *Id.* at ¶ 8.

Sometime in early 1997, Plaintiff was diagnosed with Epstein Barr Virus, and she requested that her hours be less sporadic to accommodate her condition. *Id.* at ¶¶ 16,17. Judy Russo, Acme's Manager of Human Resources, asked Plaintiff to provide a note from a doctor. *Id.* at ¶ 17. On March 19, 1997, Plaintiff provided a note from her doctor stating that she has been diagnosed with Epstein Barr Virus. *Id.* Shortly thereafter, Plaintiff requested to work the night shift, and Acme granted the request. *Id.* at ¶ 18.

On July 31, 1997, Plaintiff requested daytime hours again. This time, she provided Acme, in writing, with a proposed schedule of the days and hours she would work. *Id.* at ¶ 19. Acme began scheduling Plaintiff in accordance with this request in September of 1997. *Id.* at ¶ 20. Plaintiff's new schedule turned out to be short-lived, and her hours were reduced somewhat by a process known as "bumping". *Id.* at ¶ 22. "Bumping" is a method by which a senior

---

[1]Defendants also filed a motion to strike Plaintiff's Declaration, filed on March 4, 2008, because it is untimely filed pursuant to L. Civ. R. 7.1. Since the Court is dismissing Plaintiff's claims, the Court will deny Defendants' motion to strike.

employee can take hours assigned to a less senior employee if the less senior employee is scheduled more hours than the CBA guarantees. *Id.* at ¶ 23. Some of Plaintiff's hours were "Bumped" by Hazel Marshall, a more senior employee. *Id.* at ¶ 22. Plaintiff filed a complaint against the UFCW with the Pennsylvania Human Relations Commission alleging that by bumping, Acme violated her accommodation agreement. *Id.* at ¶ 24. It is unclear what resulted from the complaint, but the bumping stopped in 1998 when Hazel Marshall died. *Id.* at ¶ 26. Plaintiff had no complaints about her schedule after this point continuing throughout her employment at the Morrisville store. *Id.* at ¶ 26. Then, in 1999, Plaintiff requested a transfer to Acme's store in Lawrenceville, NJ, which was granted. *Id.* at ¶ 27.

The specifics of Plaintiff's schedule at the Lawrenceville store are unclear in the record, but Plaintiff worked there without incident until early 2002.[2] At some point, Plaintiff's hours were altered. Plaintiff's Answer to Undisputed Facts of Defendant ("Plaintiff's Facts"), ¶ 30. On February 3, 2002, Plaintiff filed a grievance with the UFCW against store director Defendant Farnham for harassment and discrimination because she was scheduled outside of her proposed schedule. (Def.s Facts, ¶ 30). On February 18, 2002, Acme held a meeting to discuss Plaintiff's scheduling issues. *Id.* at ¶ 32.

On February 22, 2002, Defendant Hauser, wrote a letter to Plaintiff asking for medical documentation of Plaintiff's medical condition. *Id.* at ¶ 33. In the letter, Hauser requested that Plaintiff provide her with current information since the previous communication from Plaintiff's doctor was four years old. This letter requested the documentation to be sent to Acme by March

---

[2] Plaintiff implies that her request to transfer to the Lawrenceville store included a request to have the same schedule which she previously worked. Plaintiff's Answer to Undisputed Facts of Defendant, ¶ 27.

22, 2002, and indicated that Acme would continue to schedule Plaintiff in accordance with her requested hours until the letter was received. *Id.* Plaintiff provided a note from her doctor dated March 18, 2002, which said that Plaintiff was under his care for chronic fatigue syndrome with Epstein Barr Virus. *Id.* at ¶ 35. In addition, the doctor requested that Acme "take Plaintiff's health needs into consideration when scheduling her hours." *Id.* Hauser responded on March 21, 2002, by sending a letter directly to Plaintiff's doctor requesting specific information about her condition and limitations created by it. *Id.* at ¶ 36. The doctor did not respond to this request for 18 months. *Id.* at ¶ 37. In addition to this letter to Plaintiff's doctor, Hauser sent a letter to Plaintiff requesting similar documentation. *Id.* at ¶ 38. This letter gave Plaintiff 30 days to respond. *Id.* Plaintiff did not respond for over a year. Id.

On May 10, 2002, Plaintiff took a leave of absence. *Id.* at ¶ 45. On June 17, 2002, while on leave, Plaintiff filed a complaint with the National Labor Relations Board ("NLRB") against Defendant Farnham for alleged violations of the CBA. *Id.* at ¶ 46. On October 20, 2002, Plaintiff returned to work. *Id.* at ¶ 45. Defendant Hauser, Defendant Jablonski, and Plaintiff exchanged multiple letters in an attempt by Acme to determine if Plaintiff had any medical restrictions on her job functions. *Id.* at ¶¶ 48-52. No clear resolution of this issue was reached, and Plaintiff was assigned to cashier duty. *Id.* at ¶ 53.

On February 18, 2003, Plaintiff submitted a note from her doctor concerning an ankle injury she sustained. *Id.* at ¶ 55. Acme responded by assigning Plaintiff to a position in general merchandise. *Id.* Acme also sent Plaintiff a letter asking her to have her doctor complete an enclosed form for the purpose of allowing Acme to determine an appropriate job for Plaintiff with her medical condition. *Id.* at ¶ 56. Plaintiff returned the form with the following doctor's

4

recommendations: Plaintiff was "1) unable to stand in one spot more than 5% of the time, 2) unable to life more than 20 pounds and 3) unable or seldomly able to push and pull stock carts." *Id.* at ¶ 58.  Acme considered these limitations and determined that there was no work available which Plaintiff could perform. *Id.* at ¶ 59.  As a result, on March 21, 2003, Acme removed Plaintiff from the work schedule. *Id.*  Several letters were exchanged between Plaintiff and Acme about the situation, but no resolution was reached. *Id.* at ¶¶ 60-66.

On April 15, 2003, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") claiming that Acme violated the Americans with Disabilities Act ("ADA") by failing to provide her a reasonable accommodation. *Id.* at ¶ 68.  On August, 13, 2003, the EEOC dismissed the charge and issued a right to sue notice. *Id.* at ¶ 69.

On September 16, 2003, Plaintiff provided Acme with a letter from her doctor which stated that Plaintiff was capable of performing any job duties except cashier and cart return. *Id.* at ¶¶ 72-73.  In this letter, Plaintiff asked to return to work on September 21, 2003. *Id.*  After receiving this letter, Defendant Hauser advised Plaintiff that Acme would require Plaintiff to undergo an independent medical evaluation. *Id.* at ¶ 76.  At some point in Fall of 2003, Plaintiff was evaluated by foot specialist Dr. Petolillo, and Dr. Petolillo submitted a report on December 8, 2003. *Id.* at ¶¶ 79-80.  In the report, Dr. Petolillo concluded that Plaintiff's body mechanics were such that she was unable to do the type of standing required for cashier duty. *Id.* at ¶ 80.  As a result, on December 28, 2003, Acme returned Plaintiff to work as a "non-checker qualified clerk" position with a lower hourly rate. *Id.* at ¶¶ 82-83.

On April 26, 2004, Plaintiff requested to be cross trained for the positions of Customer Service Representative and Self-Check Cashier Assistant. *Id.* at ¶ 84.  Acme denied Plaintiff's

request because the position of Customer Service Representative includes occasional cashier duty and the position of Self-Check Cashier Assistant is not a position separate from that of cashier-qualified clerk. *Id.* at ¶ 85. Since Plaintiff could not perform cashier duty, Acme refused to train her for these positions. *Id.*

On June 23, 2004, Plaintiff wrote to Defendants Houser and Jablonski claiming that Defendant Farnham committed an act of physical violence against Plaintiff. *Id.* at ¶ 86. Acme conducted an investigation which did not substantiate Plaintiff's claim. *Id.* at ¶ 87. In July of 2004, Defendant Farnham was transferred to another store and no longer was Plaintiff's supervisor. *Id.* at ¶ 88.

The facts surrounding the termination of Plaintiff's employment are in dispute. The parties agree that on January 29, 2005, Plaintiff left the store for a period of approximately 51 minutes without clocking out *Id.* at ¶ 92. The parties also agree that Plaintiff worked through her lunch break while she was clocked out. *Id.* at ¶ 93. Plaintiff claims that she was not required to clock out when leaving because she was entitled to two 15 minute breaks which she took together. (Plaintiff's Facts, ¶¶ 92). Plaintiff acknowledges that her absence from the store was longer than 30 minutes, and claims that she worked through lunch to make up the additional time. *Id.* Plaintiff also claims that she had permission from Sharon Ford, the "acting Office Manager for the day." *Id.* at ¶¶ 92-93. Defendant contends that Ms. Ford is a part-time clerk with no supervisory position over Plaintiff. (Defendant's Reply in Support of Motion, 12). On March 4, 2005, Acme terminated Plaintiff's employment for violation of Acme's time clock policy. (Def. Facts, ¶¶ 95-96).

On April 20, 2005, the New Jersey Unemployment Compensation Appeal Tribunal held a

6

hearing to determine Plaintiff's eligibility for benefits.  *Id.* at ¶ 99.  Plaintiff did not participate in this hearing.  *Id.*  The tribunal's findings of fact stated "[t]he Claimant received prior warnings."  *Id.*  Plaintiff contends that this statement is false and alleges that Defendant Acme lied to the tribunal by asserting that she has been given prior warnings about time clock policy violations.  *Id.*  Defendant contends that Carl Luthke, a representative for Acme, specifically told the tribunal that Plaintiff had not been given warnings about time clock policy violations.

## **Discussion**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Fed. R. Civ. P. (56)(c)*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  A fact is "material" only if it might affect the outcome of a suit under the applicable rule of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  *Id.*  The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment.  *Celotex*, 477 U.S. at 330.  Once the moving party satisfies this initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  *Fed. R. Civ. P. 56 (e)*.  To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324.  In other words, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Ridgewood Bd. Of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999).  A genuine

issue of material fact is one that will permit a reasonable jury to return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248. In evaluating the evidence, a court must "view the inferences to be drawn from the underlying facts in the light most favorable to the [non-moving] party." *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002)(citations omitted).

### A. Plaintiff's Claims Under 42 U.S.C. § 1983

Plaintiff's claims under 42 U.S.C. § 1983 against all Defendants fail as a matter of law because Defendants are not state actors. The statute provides a remedy for claimants who have been deprived of a constitutional right by the government or an agent thereof. "[T]he essence of section 1983's color of law requirement is that the alleged offender, in committing the act complained of, abused a power or position granted by the state." *Hill v. Borough of Kutztown,* 455 F.3d 225, 241 (3d Cir. 2006) (quoting *Bonenberger v. Plymouth Tp.,* 132 F.3d 20, 24 (3d Cir.1997)). Plaintiff has not alleged that Acme or its employees "abused a power or position granted by the state." *Id.* On the contrary, the record clearly indicates that Acme is a private corporation and the other defendants are private citizens and agents of Acme. Nothing in Plaintiff's complaint or opposition gives the slightest indication that any of Defendants were acting "under color of law" *Id.* In Plaintiff's opposition, she restates her damages and contends that she has a right to relief, but she does no address the requirement that Defendants be state actors. As a result, all of Plaintiff's claims under 42 U.S.C. § 1983 are dismissed with prejudice.

### B. Plaintiff's Claims Under the ADA

"[T]he ADA . . . require[s] pursuit of administrative remedies before a plaintiff may file a complaint in court." *Churchill v. Star Enterprises,* 183 F.3d 184, 190 (3d Cir. 1999). To meet this requirement, a plaintiff must "follow the administrative procedures set forth in Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e-05." *Id.*  The "prerequisites to a suit under Title VII are the filing of charges with the EEOC and the receipt of the Commission's statutory notice of the right to sue."  *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 398 (3d Cir. 1976).  The Supreme Court has determined that administrative "[e]xhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan*, 503 U.S. 140, 145, 112 S.Ct. 1081, 1086 (1992).  Exhaustion requirements ensure "that agencies, not the courts, . . . have primary responsibility for the programs that Congress has charged them to administer." *Id.* at 145.  In addition, when administrative review fails to resolve the matter, "exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Id.* at 145-146.

In Count I of the amended complaint, Plaintiff claims that Defendants harassed her by reducing and changing her hours.  Count II is a claim of discrimination under the ADA wherein Plaintiff alleges that Acme failed to provide a reasonable accommodation for Plaintiff's ankle injury and eventually terminated Plaintiff.  Count III is a claim for hostile work environment which includes Acme's failure to provide reasonable accommodation and a physical assault upon Plaintiff by Defendant Farnham.[3]

Plaintiff filed a charge with the EEOC on April 15, 2003 in response to Plaintiff being removed from the schedule after her ankle injury.  The EEOC charge lists numerous facts and allegations going back as early as 1997.  It is unclear what specific claims are covered by this EEOC charge, but it clearly covers only claims based on events which occurred before April 15,

---

[3]Plaintiff's amended complaint labels the third count as "Count IV," but there are only three counts.  For the purposes of this memorandum, the hostile work environment claim will be referred to as count III.

2003.  For the purpose of this discussion, we divide all of Plaintiff's ADA claims into two groups.  The first group is those events which occurred before the EEOC charge was filed, and the second group is comprised of all events occurring after April 15, 2003.

All of Plaintiff's claims in the first group fail as a matter of law because Plaintiff failed to initiate an action within ninety days of being issued a right to sue letter. 42 U.S.C. § 2000e-5(f)(1) provides that "within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charged." 42 U.S.C. § 2000e-5(f)(1).  This 90 days "begins to run when the plaintiff has notice of the EEOC decision; this usually occurs on the date he receives a right-to-sue letter." *Mosel v. Hills Dept. Store, Inc.*, 789 F.2d 251 (3d Cir. 1986).  Plaintiff Joseph was issued a right to sue letter on August 13, 2003, but she did not initiate the present action until March 5, 2007.[4]  As a result, any ADA claims based on events which occurred before April 15, 2003 are time barred and are dismissed without prejudice.

All of Plaintiff's Claims in the second group fail as a matter of law because Plaintiff failed to exhaust all of her available administrative remedies.  As discussed above, Plaintiff was required to file a charge with the EEOC before pursuing an action in court.  Claims based on events occurring after April 15, 2003 would not be included in this charge, and Plaintiff filed no other EEOC charge.  Moreover, Plaintiff does not address the issue of administrative exhaustion in her opposition.  As a result, these later claims must be dismissed for failure to exhaust administrative

---

[4]The Supreme Court has recognized the equitable tolling doctrine which allows Plaintiff to "sue after the statutory time period for filing a complaint has expired if they have been prevented from filing in a timely manner due to sufficiently inequitable circumstances." *Seitzinger v. The Reading Hospital and Medical Center*, 165 F.3d 236, 240 (3d Cir. 1999). *See Baldwin County Welcome Ctr. V. Brown*, 466 U.S. 147, 151 (1984).  In this case, Plaintiff has alleged no inequitable circumstances, nor can the Court find any.  In fact, Plaintiff waited over three and a half years to file the present action.

remedies.

As a final note, which neither party addresses, exceptions do exist. Administrative remedies "need not be pursued if the litigant's interests in *immediate* judicial review outweigh the government's interests in the efficiency or administrative autonomy." *Id.* at 146 (citations omitted) (emphasis added). This exception is meant to shortcut the process by skipping administrative review in cases where expediency is important. No such exigent circumstances exist in the present case. Plaintiff Joseph clearly had no interest in "immediate judicial review" as evidenced by the fact that she waited until March 5, 2007 to file this action. This is two years from the date of her termination.

### C.  Plaintiff's Claims Under the NJLAD.

Plaintiff no longer having federal claims under 42 U.S.C. § 1983 or the ADA, the Court lacks subject matter jurisdiction over her state law claims, unless jurisdiction exists under 28 U.S.C. § 1332. However, complete diversity of citizenship does not exist in this case; Defendant Jablonski, Defendant Hauser and Plaintiff Joseph are all citizens of Pennsylvania. (Jablonski Dep., 4:3; Hauser Dep., 4:1; Joseph Dep., 10:17). In addition, it appears that Defendant Acme is headquartered in Pennsylvania.[5] The only remaining source of jurisdiction over the NJLAD claims is 28 U.S.C. § 1367. However, supplemental jurisdiction is not automatic, and "[t]he district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, [or] the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C.A. § 1367(c). Unless circumstances dictate otherwise, district courts

---

[5] http://www.hoovers.com/acme-markets/--ID__109724--/free-co-factsheet.xhtml

generally should decline to exercise supplemental jurisdiction. See *Shaffer v. Board of School Directors of Albert Gallatin Area School*, 730 F.2d 910, 912 (3d Cir. 1984) (holding that "pendent jurisdiction [over state law claims] should be declined where the federal claims are no longer viable") (citation omitted); *see also Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (recognizing that if the district court has dismissed all claims over which it has original jurisdiction, the court must decline to decide pendent state claims unless "considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so") (citation and quotations omitted).

Furthermore, district courts should not decide issues of state law "both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers Of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Courts in this circuit have consistently declined to exercise supplemental jurisdiction over state claims when all federal claims have been dismissed. *See V-Tech Services, Inc. v. Street*, 215 Fed. Appx. 93, 96 (3d Cir. 2007) (affirming the district court's refusal to exercise supplemental jurisdiction over fraud, promissory estoppel, breach of contract, and unjust enrichment claims after dismissal of RICO claims); *Wall v. Dauphin County*, 167 Fed. Appx. 309, 313 (3d Cir. 2006) (approving dismissal of state claims for lack of jurisdiction after dismissal of plaintiff's § 1983 and § 1985 claims); *Mosca v. Cole*, 384 F.Supp.2d 757, 770 (D.N.J. 2005) (remanding remaining state NJLAD and other claims back to state court after plaintiff's federal claims were dismissed by the district court). Here, because Plaintiff's federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and therefore dismisses Plaintiff's NJLAD claims without prejudice. The statute of

12

limitations is tolled for 30 days after dismissal to allow Plaintiff to file her NJLAD claims in state court pursuant to 28 U.S.C. § 1367(d).

DATED:  July 29, 2008

                                                                /s/ Freda L. Wolfson
                                                                FREDA L. WOLFSON, USDJ